## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **USI INSURANCE SERVICES, LLC, and USI INSURANCE SERVICES NATIONAL, INC. (formerly known as WELLS FARGO INSURANCE SERVICES USA, INC.),**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**LOCKTON COMPANIES, LLC, d/b/a LOCKTON COMPANIES-NEW YORK**<br>    **444 West 47th Street, Suite 900**<br>    **Kansas City, Missouri 64112, and**<br><br>**LORRAINE YUMUL GANT**<br>    **324 East 73rd Street, Apt. 3D**<br>    **New York, New York 10021,**<br><br>    **Defendants.** | Case No. 1:17-cv-09948<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs USI Insurance Services, LLC ("USI"), and USI Insurance Services National, Inc. (formerly known as Wells Fargo Insurance Services USA, Inc., and referred to herein as "Wells Fargo" or the "Company") (collectively, "Plaintiffs"), for their Complaint against Defendants Lockton Companies, LLC ("Lockton"), and Lorraine Yumul Gant ("Gant") (referred to collectively as "Defendants"), state and allege the following:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Wells Fargo is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Valhalla, New York.

2.      Plaintiff USI is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Valhalla, New York.  USI's sole member is USI Holdings Corporation, which is a corporation organized and existing under the State of Delaware with its principal place of business in the State of New York.

1

3.      Effective on or about December 1, 2017, USI acquired all the stock of Wells Fargo pursuant to a stock purchase agreement.  Wells Fargo continues to exist as a separate entity. Through their relationship, Plaintiffs have a common interest in the outcome of this litigation.

4.      Defendant Lockton Companies, LLC ("Lockton"), is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business at 444 West 47th Street, Suite 900, Kansas City, Missouri 64112.  On information and belief, Lockton does business in the State of New York as "Lockton Companies-New York," which has a business address of 1185 Avenue of the Americas, Suite 2010, New York, New York 10036. Lockton is registered to do business in the State of New York and the name and address of Lockton's registered agent in this State is Corporate Creations Network, Inc., 15 North Mill Street, Nyack, New York 10960.

5.      Defendant Gant is a resident of New York, New York.  Gant was an employee of Wells Fargo in its New York City office until she resigned on or about November 28, 2017.

6.      Immediately upon her resignation from Wells Fargo, Gant became an employee of one of the Lockton family of companies, which on information and belief is Defendant Lockton doing business as Lockton Companies-New York.

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331, because this action includes claims arising under the laws of the United States.

8.      The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1367 over state law claims.

9.      Venue in this Court is appropriate under 28 U.S.C. §1391, because Defendants are residents of this District, and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

FPDOCS 33549800.1

## ALLEGATIONS COMMON TO ALL COUNTS

**I.      The Parties' Relationships.**

10.     Wells Fargo is a nationwide insurance broker licensed in all 50 States and is engaged in the business of selling and providing insurance services and products to its clients/customers and prospective clients/customers (the terms "clients" and "customers" are used interchangeably in this Complaint).

11.     USI is an insurance brokerage and consulting firm that delivers property and casualty, employee benefits, personal risk, program and retirement solutions to large risk management clients, middle market companies, smaller firms, and individuals.

12.     Lockton is an insurance broker and part of the Lockton family of companies, which describes itself on its website as "the world's largest privately held, independent insurance broker" (http://www.lockton.com/the-lockton-story, last visited Dec. 12, 2017).

13.     Lockton is a direct competitor of Plaintiffs.

14.     As noted, on information and belief, Lockton is also the Lockton company that currently employs Defendant Gant.

15.     Until on or about November 28, 2017, Defendant Gant was a Wells Fargo employee.  Gant was employed as an Insurance Placement Specialist/Assistant Vice President in the Company's Private Risk Management ("PRM") group and worked in the Company's New York City office.

16.     In consideration for her becoming employed and compensated by Wells Fargo, Gant entered into an agreement with the Company that prohibited her, both during her employment with the Company and at any time thereafter, from using or disclosing any trade secrets or confidential information of Wells Fargo or information about the customers of Wells Fargo.  The

3

agreement also required Gant, upon her resignation, to immediately return to Wells Fargo all of its records and confidential information, including but not limited to information stored on computers and other electronic devices.

17.     In addition, the agreement provided that for two years after her resignation or other termination from employment with Wells Fargo, Gant was (1) not to solicit, recruit, or promote the solicitation or recruitment of any employee of Wells Fargo for the purpose of encouraging that employee to leave employment with Wells Fargo; and (2) not to solicit, participate in, or promote the solicitation of any Wells Fargo client, customer, or prospective customer with whom Gant had material contact or regarding whom she received confidential information, for the purpose of providing competitive products or services.

18.     On or about November 28, 2017, Gant and seven other members of the PRM group resigned from Wells Fargo and immediately became employees of Lockton or an affiliated business entity.  Among those other defecting Wells Fargo employees were Chad Elgas, Desire Albion, Thomas Bonafede, Michelle Shaner, Sharon Trautewig, and Jill Arnold Bull.

19.     The resignation letters of the resigning PRM group employees were virtually identical and show the concerted nature of their conduct.

20.     The commissions the resigning PRM group employees generated for Wells Fargo totaled approximately $25 million per year.

21.     Gant is currently employed as Vice President, Private Wealth Practice, at Lockton's 1185 Avenue of the Americas, 20th Floor, New York, New York 10036 address.

22.     On information and belief, even while still an employee with Wells Fargo, Gant took possession of Wells Fargo's trade secrets and confidential information, including information regarding Wells Fargo customers, from Wells Fargo's computer system and files for purposes of

4

competing with Wells Fargo, without proper authority, and failed to return such information to Wells Fargo upon her resignation or thereafter.  Gant has used and is using Wells Fargo's trade secrets and confidential information for her own benefit and that of her new employer, Lockton, in order to solicit or promote the solicitation of Wells Fargo customers to terminate their relationship with Wells Fargo and give their business to Gant and Lockton, and otherwise to unfairly compete with the Company.  More specifically, and as set forth in greater detail below, Wells Fargo has documentary evidence that Gant has transmitted the Company's confidential and proprietary information and trade secrets to Lockton employees.

## II.     Wells Fargo's Business and Operations.

23.     A key and principal part of Wells Fargo's business is providing insurance products and services that are unique to the particular needs and specifications of its clients and customers. Information concerning Wells Fargo's customers and the details of their insurance needs and policies, including but not limited to non-public internal procedures, programs, and forms, non-public lists of prospective and insured customers, non-public information compiled on behalf of Wells Fargo regarding such facts as habits and insurance needs of customers and prospective customers, locations and descriptions of insured properties or properties proposed to be insured, expiration dates of insurance policies, and insurance daily reports (hereinafter "Confidential Information," which is further defined below), is considered and treated as highly confidential within Wells Fargo and is not shared with anyone outside of the Company.

24.     Wells Fargo's Confidential Information also includes, but is not limited to, such information as relates to its methods, services, pricing, costs, margins and mark ups, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques, and processes.  This information, too, like all of Wells

Fargo's Confidential Information, is considered and treated as highly confidential within Wells Fargo and is not shared with anyone outside the Company.

25.     Wells Fargo has developed and maintained its Confidential Information through considerable expenditure of time, effort, and expense.

26.     In addition to the time, effort, and money spent to develop this Confidential Information, Wells Fargo has also expended significant time, effort, and money to develop relationships with its customers; to learn the particular insurance needs, specifications, and requirements of its customers; to develop substantial contacts and goodwill with its customers; and to market and sell its insurance products and services to those customers.

27.     Wells Fargo considers and treats all of its Confidential Information as having substantial competitive value to Wells Fargo.

28.     Wells Fargo's Confidential Information is neither generally known nor readily ascertainable by proper means from publicly available sources; is related directly to and used by Wells Fargo's business; and provides Wells Fargo with a competitive advantage over those who do not know this information.  The possession of Wells Fargo's Confidential Information would give competitors, particularly those like Lockton that compete directly with Wells Fargo by providing similar insurance brokerage services in the same area as Wells Fargo, an unfair economic advantage in developing, marketing, brokering, and selling competitive insurance services and products.

29.     Wells Fargo therefore has consistently used, and continues to use, reasonable and diligent efforts to protect and keep secret its Confidential Information.  These efforts include, but are not limited to, prohibiting access to the information by the general public; requiring employees to sign confidentiality agreements; limiting general employee access to the information; instructing

employees not to share the information with competitors; and restricting access to the information to Wells Fargo employees who agree to maintain its confidentiality and to use the information only for the benefit of Wells Fargo.

## III.   Broker of Record.

30.     At all relevant times there was and still is a general custom and usage in the insurance brokerage industry that a broker of record is the entity authorized by the customer to negotiate insurance policy terms on the customer's behalf.

31.     At all relevant times, there was and still is a general custom and usage in the insurance brokerage business that the broker of record, for services performed, is entitled to commissions based upon a percentage of the insurance premiums payable with respect to the insurance policies purchased by the customer.  In the ordinary situation, the customer pays the premium to the insurance company (which includes a charge for the commission to be paid to the broker of record), and the broker becomes entitled to receive commissions from the insurance company as those premiums are received by the insurance company from the customer.

32.     Thus, an insurance broker like Wells Fargo is entitled to receive a commission from the insurance company for every insurance policy on which Wells Fargo is listed as the broker of record.

33.     When a change in the broker of record occurs, the "new" broker of record is entitled to receive commissions from the insurance company for every policy on which it is listed as the broker of record, and the "old" broker of record is no longer entitled to receive such commissions.

## IV.   Gant's Agreement with Wells Fargo.

34.     On August 2, 2016, as a condition of her employment with Wells Fargo, and in consideration of her becoming employed and being compensated by Wells Fargo, Gant entered

7

into a Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions ("Agreement," a true and correct copy of which is attached hereto as **Exhibit A**.)

35.     Section II of the Agreement is entitled "Trade Secrets And Confidential Information" and provides:

> During the course of my employment I will acquire knowledge of the Company's Trade Secrets and other proprietary information relating to its business, business methods, personnel, and customers (collectively referenced as "Confidential Information"). "Trade Secrets" are defined as information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The Company's Trade Secrets include, but are not limited to, the following:
>
> • the names, address, and contact information of the Company's customers and prospective customers, as well as any other personal or financial information relating to any customer or prospect, including, without limitation, account numbers, balances, portfolios, maturity and/or expiration or renewal dates, loans, policies, investment activities, purchasing practices, insurance, annuity policies and objectives;
>
> • any information concerning the Company's operations, including without limitation, information related to its methods, services, pricing, costs, margins and mark ups, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques, agent information, and processes;
>
> • any other proprietary and/or confidential information relating to the Company's customers, employees, products, services, sales, technologies, or business affairs.
>
> I understand that Records of the Company also constitute Confidential Information and that my obligation to maintain the confidentiality thereof continues at all times during and after my employment. "Records" include, but are not limited to, original, duplicated, computerized, memorized, handwritten or any other form of information, whether contained in materials provided to me by the Company, or by any institution acquired by the Company, or compiled by me in any form or manner including information in documents or electronic devices, such as software, flowcharts, graphs, spreadsheets, resource manuals, videotapes, calendars, day

8

timers, planners, rolodexes, or telephone directories maintained in personal computers, laptop computers, personal digital assistants or any other device. These records do not become any less confidential or proprietary to the Company because I may commit some of them to memory or because I may otherwise maintain them outside of the Company's offices.

I agree that any Confidential Information of the Company is to be used by me solely and exclusively for the purpose of conducting business on behalf of the Company. I am expected to keep such Confidential Information confidential and not to divulge, use or disclose this information except for that purpose. If I resign or am terminated from my employment for any reason, I agree to immediately return to the Company all Records and Confidential Information, including information maintained by me in my office, personal electronic devices, and/or at home.

36.     Section III of the Agreement is entitled "Non-Solicitation Of The Company's

Customers and Employees" and provides:

I agree that for a period of two (2) years immediately following termination or resignation of my employment for any reason, I will not do any of the following, directly or indirectly or through associates, agents, or employees:

   a.   solicit, recruit or promote the solicitation or recruitment of any employee or consultant of the Company for the purpose of encouraging that employee or consultant to leave the Company's employ or sever an agreement for services;

   b.   solicit, participate in or promote the solicitation of any of the Company's clients, customers, or prospective customers with whom I had Material Contact and/or regarding whom I received Confidential Information, for the purpose of providing products or services that are in competition with the Company's products or services ("Competitive Products/Services"). "Material Contact" means interaction between me and the customer, client or prospective customer within one (1) year prior to my last day as a team member which takes place to manage, service or further the business relationship; or

   c.   Accept insurance business from or provide Competitive Products/Services to customers or clients of the Company:

      i.   with whom I had Material Contact, and/or

      ii.  were clients or customers of the Company within six (6) months prior to my termination of employment.

9

This two (2) year limitation is not intended to limit the Company's right to prevent misappropriation of its Confidential Information beyond the two (2) year period.

## V. Defendants' Violations of Their Legal Obligations.

37.     Unfortunately, Gant has breached and is continuing to breach her legal and contractual obligations to Wells Fargo, on information and belief with the active encouragement of her new employer, Lockton, which on information and belief has actual knowledge of Gant's Agreement with Wells Fargo.

38.     Gant has been misappropriating and misusing Wells Fargo's Confidential Information in order to unfairly compete with Wells Fargo, and on information and belief to solicit Wells Fargo customers to replace the Company as their broker of record with Lockton, in violation of the Agreement and her legal obligations.

39.     For example, on December 6, 2017, barely more than a week after her sudden resignation from Wells Fargo, Gant sent an e-mail to her former Wells Fargo colleagues Chad Elgas, Desire Albion, Thomas Bonafede, Michelle Shaner, Sharon Trautewig, and Jill Arnold Bull. Those same individuals were and are now Gant's fellow employees at Lockton.  On information and belief, Bull works in the same Lockton office as Gant.

40.     The e-mail had a Power Point presentation attached, which was a template for client proposals under the Lockton logo.

41.     The e-mail was sent from "Gant, Lorraine" <LGant@lockton.com>, to "Elgas, Chad" <CElgas@lockton.com>, "Albion, Desire" <DAlbion@lockton.com>, "Bonafede, Thomas" <TBonafede@lockton.com>, "Shaner, Michelle" <MShaner@lockton.com, "Trautewig, Sharon" <STrautewig@lockton.com>.

42.     The text of the e-mail was:

Hi, Team!

10

> Here's a proposal I created recently – a friend of mine in commercial
> here sent me one branded slide ***and I tried to recreate our proposal
> off of that***.
>
> I'm working on the proxy and will forward ASAP as well.
>
> Best,
>
> Lorraine Gant, PLCS
> Vice President, Private Wealth Practice
> Lockton Companies
> 1185 Avenue of the Americas, 20th Floor
> New York, NY 10036
> Direct: (646) 572-3942
> Mobile: (646) 618-2102
> LGant@lockton.com

The e-mail is part of a true and correct copy of the pertinent e-mail string attached hereto as **Exhibit B** (emphasis added).

43.     It is evident that the "proposal" that Gant "tried to recreate" was Wells Fargo's own proposal template, because the formatting of her Lockton proposal template is virtually identical to that of Wells Fargo's, and the text is identical in some places to Wells Fargo's, and a close paraphrase in other places.

44.     The reason Wells Fargo knows about Gant's foregoing e-mail and attachment is that she omitted former Wells Fargo and current Lockton colleague Jill Arnold Bull from her original e-mail.  Gant forwarded the e-mail to Bull afterward, but made the error of forwarding it to Bull's former Wells Fargo e-mail address:  Jill Arnold Bull <jill.arnold.bull@wellsfargo.com>.  (This e-mail is at the top of the e-mail string attached hereto as **Exhibit B**.)  Because of that, Wells Fargo obtained possession of Gant's original e-mail and attachment.

45.     On information and belief, Gant, her former Wells Fargo colleagues now employed at Lockton or a Lockton-affiliated company, and Lockton itself are conspiring to use and are using

11

Wells Fargo's Confidential Information to solicit Wells Fargo customers and to compete unfairly against Wells Fargo.

46.     By engaging in the conduct described above, Gant is breaching her contractual and other legal obligations to Wells Fargo.

47.     On information and belief, Lockton has actual knowledge of Gant's Agreement with Wells Fargo and is permitting, encouraging, and assisting Gant's breach of that Agreement, as well as of her other legal obligations to Wells Fargo.

## COUNT ONE
### Violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.
### (Against Both Defendants)

48.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 47 as if the same were fully set forth at length herein.

49.     The information Gant has taken from Wells Fargo with the encouragement and assistance of Lockton constitutes trade secrets of Wells Fargo subject to protection under the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.

50.     This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or to Wells Fargo's competitors. Wells Fargo spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

51.     Wells Fargo has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access Company computer systems and records, and having policies that expressly prohibit the use, removal, and disclosure of such information outside of Wells Fargo.

52.     On information and belief, Lockton aided, abetted, and facilitated Gant's theft and misappropriation of Wells Fargo's trade secrets.  Additionally, Defendants are currently in possession of Wells Fargo's trade secrets and acquired them by improper means.

53.     The foregoing conduct constitutes a misappropriation and misuse of Wells Fargo's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq.

54.     Gant's misappropriation of Wells Fargo's trade secrets, and Lockton's material assistance and facilitation of the same, have caused Plaintiffs irreparable injury for which monetary damages alone are an inadequate remedy.

55.     Defendants willfully and maliciously misappropriated Wells Fargo's trade secrets, and Plaintiffs are therefore entitled to recover, in addition to the damages provided in the Defendant Trade Secrets Act, two times their damages and the reasonable attorney fees they incur in this action, appropriate royalties for the trade secrets that Defendants misappropriated, as well as any amount by which Defendants were unjustly enriched by their misappropriation.

## COUNT TWO
### Breach of Contract
### (Against Gant)

56.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 55 as if the same were fully set forth at length herein.

57.     In her Agreement with Wells Fargo, Gant agreed to the nondisclosure of Wells Fargo's Confidential Information to anyone outside Wells Fargo.

58.     In her Agreement with Wells Fargo, Gant agreed not to use Wells Fargo's Confidential Information for any purpose other than to conduct business on behalf of Wells Fargo.

59.     In her Agreement with Wells Fargo, Gant agreed that upon her resignation from Wells Fargo, she would immediately return all Confidential Information to Wells Fargo.

60.     In her Agreement with Wells Fargo, Gant agreed that for two years after her resignation from Wells Fargo, she would not solicit, participate in, or promote the solicitation of Wells Fargo customers with whom she had Material Contact or regarding whom she received Confidential Information.

61.     By the conduct described above, Gant breached these provisions of her Agreement with Wells Fargo.

62.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

## COUNT THREE
### Breach of Contract – Implied Covenant of Good Faith and Fair Dealing
### (Against Gant)

63.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 62 as if the same were fully set forth at length herein.

64.     By the actions and omissions described herein, Gant breached the covenant of good faith and fair dealing implied by law in her Agreement with Wells Fargo.

65.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

## COUNT FOUR
### Tortious Interference with Gant's Agreement with Wells Fargo
### (Against Lockton)

66.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 65 as if the same were fully set forth at length herein.

67.     Lockton knew or should have known of the Agreement between Gant and Wells Fargo and the provisions therein.

14

68.     Lockton intentionally, maliciously, and without justification interfered with, and continues to interfere with, the contractual relationship between Wells Fargo and Gant, and has induced, encouraged, assisted, and permitted Gant to breach her Agreement with Wells Fargo.

69.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

## COUNT FIVE
### Tortious Interference with Contractual Relationships and
### Prospective Economic Advantage
### (Against Both Defendants)

70.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 69 as if the same were fully set forth at length herein.

71.     Wells Fargo has developed and maintained contractual and profitable business relationships with its customers.

72.     Defendants knew or reasonably should have known about these contracts and business relationships.

73.     Defendants intentionally, maliciously, and improperly interfered with, and continue to interfere with, Wells Fargo's contracts and relationships with its customers by among other things, directly or indirectly attempting to induce Wells Fargo's customers to sever their contractual and other relationships with Wells Fargo in favor of Defendants, and by using Wells Fargo's Confidential Information to do so.

74.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

15

## COUNT SIX
### Misappropriation of Trade Secrets
### (Against Both Defendants)

75.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 74 as if the same were fully set forth at length herein.

76.     The books, files, electronic data, and all other records of Wells Fargo, and the Confidential Information contained in them, including but not limited the Company's proposal templates, are trade secrets subject to protection under New York trade secret law.

77.     This information derives independent economic value by not being accessible, through proper means, to competitors such as Lockton, which can profit from its use or disclosure. Wells Fargo's proposal templates and other Confidential Information is not readily available to the public or to Wells Fargo's competitors.  Wells Fargo has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

78.     Wells Fargo has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer access passwords to be used to access Wells Fargo computer systems and records, restricting access to its business premises, and having employees, including Gant, sign agreements which expressly prohibit the use and disclosure of such information outside of Wells Fargo.

79.     The foregoing conduct of Gant, with the assistance and encouragement of Lockton, constitutes a misappropriation and misuse of Wells Fargo's trade secrets violation of New York law because Gant and Lockton have used and/or disclosed Wells Fargo's Confidential Information without Wells Fargo's consent and despite the fact that Gant acquired knowledge of this

16

information under circumstances giving rise to a duty to maintain the information's secrecy and limit its use, which duty Gant owed Wells Fargo as its agent, employee, and representative.

80.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

81.     Defendants' conduct constitutes a willful and malicious misappropriation of Wells Fargo's trade secrets, entitling Plaintiffs to an award of punitive damages.

## COUNT SEVEN
### Unfair Competition
### (Against Both Defendants)

82.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 81 as if the same were fully set forth at length herein.

83.     Defendants' conduct as described herein constitutes and unfair method of competition.

84.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

85.     Defendants' conduct is willful and malicious, entitling Plaintiffs to an award of punitive damages.

## COUNT EIGHT
### Breach of the Duty of Loyalty
### (Against Gant)

86.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 85 as if the same were fully set forth at length herein.

87.     Gant had, and continues to have, a common law duty of loyalty arising from her relationship as an employee, agent, and/or representative of Wells Fargo.

88.     Gant had a confidential relationship with Wells Fargo.

89.     Gant is now using for her own benefit and the benefit of her new employer, Defendant Lockton, the Confidential Information obtained as a result of her employment with Wells Fargo, including but not limited to the Company's proposal templates, in order to solicit Wells Fargo customers to end their business relationships with the Company and to transfer their business to Lockton, and to unfairly compete with Wells Fargo.

90.     The foregoing constitutes a breach of Gant's duty of loyalty to Wells Fargo.

91.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

92.     Gant's conduct is willful and malicious, entitling Plaintiffs to an award of punitive damages.

**COUNT NINE**
**Aiding and Abetting Breach of the Duty of Loyalty**
**(Against Lockton)**

93.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 92 as if the same were fully set forth at length herein.

94.     Lockton knows that Gant is breaching her duty of loyalty to Wells Fargo by using the Company's Confidential Information, including but not limited to the Company's proposal templates, in order to solicit Wells Fargo customers to end their business relationships with the Company and to transfer their business to Lockton, and to unfairly compete with Wells Fargo.

95.     Lockton is substantially assisting Gant's breach of her duty of loyalty to Wells Fargo by providing her with resources to use, and by itself using, Wells Fargo's Confidential Information in order to solicit Wells Fargo customers to end their business relationships with the Company and to transfer their business to Lockton, and to unfairly compete with Wells Fargo.

FPDOCS 33549800.1

96.     As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

97.     Lockton's conduct is willful and malicious, entitling Plaintiffs to an award of punitive damages.

**COUNT TEN**
**Civil Conspiracy**
**(Against Both Defendants)**

98.     Plaintiffs repeat the allegations set forth in Paragraphs 1 through 97 as if the same were fully set forth at length herein.

99.     Defendants conspired and agreed to engage in the unlawful and tortious conduct described above.

100.    Defendants deliberately engaged in such conduct in furtherance of their unlawful plan and scheme to solicit Wells Fargo customers to end their business relationships with Wells Fargo and transfer their business to Lockton, in violation of the Agreement.

101.    Defendants used and continue to use Wells Fargo's Confidential Information to solicit Wells Fargo's customers to end their business relationships with Wells Fargo and transfer their business to Lockton and to unfairly compete with Wells Fargo.

102.    Each Defendant acted on behalf of the other Defendant at all relevant times.

103.    Each Defendant has knowingly participated in, profited from, and/or ratified the conduct of the other Defendant and other conspirators.

104.    Each Defendant is therefore liable for the conduct of the other Defendant and all other participants in the conspiracy.

105.    As a result, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

106.    Defendants' conduct is willful and malicious, entitling Plaintiffs to an award of punitive damages.

**COUNT ELEVEN**
**Unjust Enrichment**
**(Against Both Defendants)**

107.    Plaintiffs repeat the allegations set forth in Paragraphs 1 through 106 as if the same were fully set forth at length herein.

108.    Defendants' conduct as described herein constitutes circumstances wherein it would be manifestly unjust, grossly unfair, and unconscionable to allow Defendants to retain Wells Fargo's Confidential Information, or to retain any benefit or profit generated from their misappropriation of such information, or from the breach of or interference with the Agreement, or from the breach of Gant's duty of loyalty to Wells Fargo, or from any other unlawful or inequitable conduct.

109.    As a result of Defendants' conduct, Plaintiffs have suffered and continue to suffer irreparable injury for which monetary damages alone are an inadequate remedy.

**COUNT TWELVE**
**Permanent Injunction**
**(Against Both Defendants)**

110.    Plaintiffs repeat the allegations set forth in Paragraphs 1 through 109 as if the same were fully set forth at length herein.

111.    Plaintiffs request that this Court issue an injunction: (a) ordering Defendants to return to Wells Fargo the confidential, proprietary, and trade secret information of Wells Fargo still within their possession, custody, or control; (b) prohibiting Defendants from using any confidential, proprietary, and trade secret information of Wells Fargo, including but not limited to the Company's proposal templates and information regarding Wells Fargo customers, to solicit,

20

service, switch and/or convert Wells Fargo's customers to other providers of insurance products and services; and (c) prohibiting Defendants, either directly or indirectly, from soliciting, accepting the business of, or servicing any Wells Fargo customer that was a customer of the Company as of the date of Gant's resignation from the Company, November 28, 2017.

112.    By reason of the conduct set forth above, Plaintiffs have suffered great and irreparable injury.  Unless Gant is enjoined from further breach of the Agreement, and Lockton is enjoined from facilitating, encouraging, and/or allowing the same, Plaintiffs will suffer additional irreparable injury by the loss of Wells Fargo customers and the further disclosure of confidential, proprietary, and trade secret information, and will incur future economic loss which is incalculable.

113.    No damage to Defendants will result from injunctive relief.  Both Defendants can continue to sell insurance products and services, but cannot use the confidential, proprietary, and trade secret information of Wells Fargo, and Gant cannot, directly or indirectly, solicit, accept, or service Wells Fargo customers either on her own behalf or on behalf of another individual or entity.

114.    Plaintiffs have no adequate remedy at law, as the damages in terms of money for the future loss of customers and confidential, proprietary, and trade secret information arising from Defendants' conduct cannot be measured or calculated.

115.    The threatened harm to Plaintiffs is greater should injunctive relief not be ordered in that Gant is in breach of the terms of the Agreement, Lockton is facilitating, encouraging, and/or permitting her to continue her breaches, and Defendants are in possession of Wells Fargo's confidential, proprietary, and trade secret information.

116.    The public has an interest in seeing that contractual provisions, including provisions regarding the use and disclosure of confidential, proprietary, and trade secret information and non-solicitation, are enforced.

FPDOCS 33549800.1

117.    Accordingly, Plaintiffs request that this Court issue permanent injunctive relief as follows:

a.    Issue an order requiring Defendants to return to Wells Fargo all confidential, proprietary, and trade secret information belonging to Wells Fargo (including but not limited to the Company's Confidential Information) that is in their possession, including but not limited to all such information in electronic form;

b.    Issue an order instructing Gant to delete no matter from her personal computer(s), cell phones, and all other electronic devices, and to turn such devices over to Plaintiffs' counsel for review by investigators chosen by Plaintiffs;

c.    Issue an order enjoining and restraining Gant for two years from the date of the order from:

i.    directly or indirectly soliciting, accepting, and/or servicing any Wells Fargo customer who was a Wells Fargo customer as of November 28, 2017; and

ii.    directly or indirectly switching and/or converting Wells Fargo customers to other providers of insurance products or services, including but not limited to Lockton;

d.    Issue an order permanently enjoining and restraining Gant from:

i.    directly or indirectly making use of confidential, proprietary, and trade secret information belonging to Wells Fargo (including but not limited to the Company's Confidential Information); and

ii.    otherwise breaching the terms of the Agreement;

e.    Issue an order permanently enjoining and restraining Lockton from using any confidential, proprietary, or trade secret information of Wells Fargo to solicit Wells Fargo's customers to switch their business to Lockton or to otherwise compete with Wells Fargo; and

f.    Award judgment in Plaintiffs' favor and against Defendants; award Plaintiffs damages, including but not limited to punitive and exemplary damages; award Plaintiffs their costs expended herein, including reasonable attorneys' fees; and award Plaintiffs such other and further relief as may be just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants for:

FPDOCS 33549800.1

A.    Permanent injunctive relief as set forth in Count Twelve;

B.    For damages as are fair and reasonable, including actual damages, punitive damages, exemplary damages, and all damages as allowed under applicable statutes;

C.    For equitable relief, pre-judgment and post-judgment interest, costs, and attorneys' fees; and

D.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

Dated:  December 20, 2017                     Respectfully submitted,

                                              s/David E. Strand
                                              DAVID E. STRAND, ESQ.
                                              Fisher & Phillips LLP
                                              620 Eighth Avenue, 36th Floor
                                              New York, NY 10018
                                              Tel.: 212-899-9960
                                              Fax: 212-956-1971
                                              E-Mail: dstrand@fisherphillips.com

                                              Fisher & Phillips LLP
                                              430 Mountain Avenue, Suite 303
                                              Murray Hill, NJ 07974
                                              Tel.: 908-516-1050
                                              Fax: 908-516-1051

                                              *Attorneys for Plaintiffs USI Insurance Services, LLC, and USI Insurance Services National, Inc.*

FPDOCS 33549800.1